USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _8/2/2022_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
BINTOU TOURE TAWREDOU,                         :
                                                :
                    Plaintiff,                   :          **OPINION &**
                                                :          **ORDER**
-v-                                             :
                                                :
KILOLO KIJAKAZI,[1]                             :          20-CV-10253 (JLC)
Acting Commissioner of Social Security,          :
                                                :
                    Defendant.                   :
                                                :
------------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

Bintou Toure Tawredou seeks judicial review of a final determination made

by Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration,

denying her applications for disability insurance benefits and supplemental security

income under the Social Security Act.  The parties have cross-moved for judgment

on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For

the reasons set forth below, Tawredou's motion is denied, the Commissioner's cross-

motion is granted, and the case is dismissed.

## I. BACKGROUND
### A. Procedural History

Tawredou filed an application for Supplemental Security Income ("SSI") on

July 13, 2018, alleging a disability onset date of June 13, 2017.  Administrative

---

[1] Kilolo Kijakazi is now the Acting Commissioner of the Social Security
Administration.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Kilolo Kijakazi is substituted as the defendant in this action.

Record ("AR"), Dkt. No. 18 at 10.[2]  The Social Security Administration ("SSA")

denied Tawredou's claims on October 25, 2018.  *Id.*  Tawredou requested a hearing

before an Administrative Law Judge ("ALJ") on November 13, 2018.  *Id.*  On

November 20, 2019, Tawredou appeared before ALJ David Suna, represented by

counsel.  *Id.*  In a 14-page decision dated December 10, 2019, the ALJ found that

Tawredou was not disabled and denied her application.  *Id.*  Tawredou sought

review of the ALJ's decision by the Appeals Council on January 10, 2020.  *Id.* at 5.

The Appeals Council denied the request on September 30, 2020, which rendered the

ALJ's decision to be the final decision of the Commissioner.  *Id.* at 1.

Tawredou timely commenced this action on December 4, 2020, seeking

judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

Complaint ("Compl."), Dkt. No. 1.  The Commissioner answered Tawredou's

complaint by filling the Administrative Record on July 14, 2021.  Dkt. No. 18.  On

November 19, 2021, Tawredou moved for judgment on the pleadings and submitted

a memorandum of law in support of her motion.  Notice of Motion, Dkt. No. 24;

Memorandum of Law in Support of Plaintiff's Motion ("Pl. Mem."), Dkt. No. 25.  The

Commissioner cross-moved for judgment on the pleadings on January 18, 2022, and

submitted a memorandum of law in support of her cross-motion.  Notice of Motion,

Dkt. No. 28; Memorandum of Law in Support of the Commissioner's Cross-Motion

("Def. Mem."), Dkt. No. 29.  On February 8, 2022, Tawredou submitted reply papers.

---

[2] The page numbers refer to the sequential numbering of the Administrative Record
provided on the bottom right corner of the page, not the numbers produced by the
Electronic Case Filing ("ECF") System.

Reply Memorandum of Law in Opposition to Defendant's Motion for Judgment on the Pleadings ("Pl. Rep."), Dkt. No. 30.  The parties have consented to my jurisdiction for all purposes under 28 U.S.C. § 636(c).  Dkt. No. 19.

### B. The Hearing Before the ALJ

The hearing was held in Jersey City, New Jersey before the ALJ on November 20, 2019.  AR at 34.  Tawredou appeared in the Bronx via video conference.  *Id.*[3]  William Aronin, Tawredou's counsel, appeared with her at the hearing.  *Id.*  Also present was Vocational Expert ("VE") Diane Durr.  *Id.*

At the time of the hearing, Tawredou was 35 years old and lived with her husband and six children in the Bronx.  *Id.* at 37.  She testified that she graduated from high school and did not complete any further schooling.  *Id.* at 39.  According to Tawredou, the last time she worked was in June 2017, and since then she supported herself through Worker's Compensation.  *Id.* at 40.  She explained that she had been in an accident in 2017.  *Id.* at 41.[4]

Tawredou testified that she has problems standing on her legs, a bad ankle injury, carpal tunnel in both her hands, cubital tunnel in her elbows and wrists, and a neck injury.  *Id.* at 44, 46–47.  Even though her ankle surgery had occurred two

---

[3] While the ALJ's decision states that the hearing was by video, AR at 10, the introduction to the transcript of the hearing notes that Tawredou appeared in person.  *Id.* at 34.  On the same page, however, the ALJ states that the hearing was held via video.  *Id.; but see id.* at 38 (referring to the fact that Tawredou arrived at hearing via taxi).

[4] Although not explicitly stated during the hearing, the record shows that Tawredou was assaulted by a patient while working as a home health care aide, giving rise to her injuries.  *See, e.g.,* AR at 16, 269; Pl. Mem. at 2.

years prior to the hearing, Tawredou stated that she "got no better" since then, despite "nonstop" physical therapy and treatment with hot packs. *Id.* at 45–46. Tawredou also reported that she has difficulties using her hands. *Id.* at 46.

Tawredou testified that she spends her days caring for her four-month-old baby, who weighed at least 10 pounds at the time of the hearing, while her husband is at work. *Id.* at 38–39. Her husband helps with her baby's baths in the morning, but during the day, she is "the one who changes diapers," "makes his meals," and "watch[es] him." *Id.* She testified that she does not do the cooking and cleaning for the household, and that her husband cooks because of problems she has standing due to her leg issue. *Id.* at 44. When the ALJ asked if Tawredou thought there were any other jobs she could do even though he understood she had "been hurt" and "can't be a home health aide anymore," she answered only by saying that she would get "very emotional." *Id.* at 48–49.

After Tawredou's testimony, the ALJ questioned the VE. *Id.* at 50. The ALJ inquired about whether an individual with Tawredou's demographic information who was limited to sedentary work and had similar psychological and physical challenges could perform Tawredou's past job. *Id.* at 52. The VE testified that such a person could not. *Id.* However, she testified that other jobs exist in the national economy that Tawredou could perform, including lens inserter, final assembler, and leaf tier. *Id.* at 52–53. These jobs do not require interaction with the general public but all involve frequent reaching and manipulating. *Id.* at 53. The ALJ further inquired how these job options would be impacted if the person could only

4

occasionally handle and finger with the non-dominant upper left extremity or left hand. *Id.* at 54.  The VE answered that those limitations would be "work preclusive."  *Id.* at 55.

### C. The Administrative Record

#### 1. Medical Evidence

In her motion papers, Tawredou provided a summary of the medical evidence contained in the administrative record.  *See* Pl. Mem. at 2–12.  In response, the Commissioner adopted Tawredou's recitation of the relevant facts and underlying proceedings.  *See* Def. Mem. at 6.  She also submitted "additional or contrary facts not contained in Plaintiff's Memorandum of Law," to which Tawredou has not objected.  *Id.* at 6.  Having examined the record, the Court adopts the parties' summaries as accurate and complete for purposes of the issues raised in this action. *See, e.g., Platt v. Comm'r of Soc. Sec.,* No. 20-CV-8382 (GWG), 2022 WL 621974, at *2 (S.D.N.Y. Mar. 3, 2022) (adopting parties' summaries of medical evidence).  The Court will discuss the medical evidence pertinent to the adjudication of this case in Section II.B below.

#### 2. The ALJ's Decision

The ALJ denied Tawredou's application on December 10, 2019.  AR at 23.  In doing so, the ALJ concluded that Tawredou was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act from June 13, 2017 through December 10, 2019, the date of the decision.  *Id.*

Following the five-step test set forth in the SSA regulations, the ALJ first found that Tawredou had not engaged in substantial gainful activity since July 13, 2018, the application date. *Id.* at 12. At step two, the ALJ found that Tawredou had the following severe impairments: bilateral ankle derangement status-post right ankle arthroscopy, degenerative disc disease, carpal tunnel syndrome and ulnar nerve neuropathy, left elbow tendinitis, venous insufficiency, obesity, depressive disorder, and anxiety disorder. *Id.*

At step three, the ALJ found that Tawredou did "not have an impairment or combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926)." *Id.* at 13.

Prior to evaluating step four, the ALJ determined Tawredou's residual functional capacity ("RFC"). Based on his analysis, the ALJ concluded that Tawredou had the RFC to perform sedentary work as defined in 20 C.F.R § 416.967(a) except for the following limitations:

> [Tawredou] cannot operate foot controls with the left foot and no more than occasionally operate foot controls with the right foot; can no more than frequently handle and finger with the non-dominant upper left extremity/left hand; can no more than occasionally push or pull; can no more than occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; can no more than occasionally balance or stoop; never kneel, crouch, or crawl; can have no exposure to unprotected heights, dangerous machinery, or operating a motor vehicle; can have no more than frequent interaction with supervisors, co-workers, or the public; can tolerate no more than occasional changes in the work setting; requires the use of a hand-held assistive device to ambulate to and from the

6

> workstation; and she can no more than frequently reach
> with the left upper extremity.

*Id.* at 15.  In reaching his conclusion, the ALJ found that Tawredou's medically

determinable impairments could reasonably be expected to cause the alleged

symptoms, but that Tawredou's statements concerning the intensity, persistence,

and limiting effects of these symptoms were not entirely consistent with the medical

evidence and other evidence in the record.  *Id.*  The ALJ reviewed and summarized

Tawredou's medical records.  *Id.* at 16–21.  He also detailed which physicians'

opinions he found persuasive and which he found unpersuasive.  *Id.* at 18–21.  In

particular, he found the medical opinion from Dr. Louis Rose, Tawredou's treating

orthopedist, to be "generally persuasive" except for his opinion as to Tawredou's

manipulative limitations.  *Id.* at 17, 18–19.

At step four, the ALJ determined that Tawredou "has no past relevant work."

*Id.* at 21.  At step five, considering Tawredou's "age, education, work experience,

and residual functional capacity," the ALJ concluded that jobs "exist in significant

numbers in the national economy" that Tawredou could perform, including lens

inserter, final assembler, and leaf tier.  *Id.* at 21–23.  Accordingly, the ALJ

determined that Tawredou was "not disabled" under the Social Security Act.  *Id.* at

23.

## II. DISCUSSION

### A. Legal Standards

#### 1. Judicial Review of the Commissioner's Decision

An individual may obtain judicial review of a final decision of the
Commissioner "in the district court of the United States for the judicial district in
which the plaintiff resides." 42 U.S.C. § 405(g).  The district court must determine
whether the Commissioner's final decision applied the correct legal standards and
whether the decision is supported by "substantial evidence." *Butts v. Barnhart*, 388
F.3d 377, 384 (2d Cir. 2004).  "Substantial evidence is more than a mere scintilla.  It
means such relevant evidence as a reasonable mind might accept as adequate to
support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting
*Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks and
alterations omitted); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)
("Under the substantial-evidence standard, a court looks to an existing
administrative record and asks whether it contains 'sufficien[t] evidence' to support
the agency's factual determinations . . . whatever the meaning of 'substantial' in
other contexts, the threshold for such evidentiary sufficiency is not high." (quoting
*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The substantial evidence standard is a "very deferential standard of review."
*Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).  The Court
"must be careful not to substitute its own judgment for that of the Commissioner,
even if it might justifiably have reached a different result upon a *de novo* review."

*DeJesus v. Astrue*, 762 F. Supp. 2d 673, 683 (S.D.N.Y. 2011) (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)) (internal quotation marks and alterations omitted).  "[O]nce an ALJ finds facts, [a court] can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'" *Brault*, 683 F.3d at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis omitted).

In weighing whether substantial evidence exists to support the Commissioner's decision, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Selian*, 708 F.3d at 417 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).  On the basis of this review, the court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding . . . for a rehearing." 42 U.S.C. § 405(g).  However, "[w]hen there are gaps in the administrative record or the ALJ has applied an improper legal standard, [the court has], on numerous occasions, remanded to the [Commissioner] for further development of the evidence."  *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)) (alteration in original).

### 2. Commissioner's Determination of Disability

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); *see also Colgan v. Kijakazi*, 22 F.4th 353, 357 (2d Cir. 2022).  Physical or mental impairments must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  "'[T]he ALJ should consider not only whether Plaintiff was disabled at the time of the hearing, but also whether Plaintiff was entitled to disability benefits for any closed, continuous period . . .  following the date of his claim.'" *Love v. Kijakazi*, No. 20-CV-1250 (EK), 2021 WL 5866490, at *5 (E.D.N.Y. Dec. 10, 2021) (quoting *Williams v. Colvin*, No. 15-CV-144 (WMS), 2016 WL 3085426, at *4 (W.D.N.Y. June 2, 2016)); *see also Milliken v. Saul*, No. 19-CV-9371 (PED), 2021 WL 1030606, at *9 (S.D.N.Y. Mar. 17, 2021) ("A 'closed period' of disability occurs where a claimant is found by the Commissioner to be disabled for a finite period of time which began and ended prior to the date of the agency's administrative determination of disability.").

In assessing a claimant's impairments and determining whether they meet the statutory definition of disability, the Commissioner "must make a thorough inquiry into the claimant's condition and must be mindful that 'the Social Security Act is a remedial statute, to be broadly construed and liberally applied.'" *Mongeur*, 722 F.2d at 1037 (quoting *Gold v. Sec'y of H.E.W.*, 463 F.2d 38, 41 (2d Cir. 1972)).  Specifically, the Commissioner's decision must consider factors such as: "(1) the

objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Id.* (citations omitted).

### a. Five-Step Inquiry

"The Social Security Administration has outlined a 'five-step, sequential evaluation process' to determine whether a claimant is disabled[.]" *Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019) (citations omitted); 20 C.F.R. § 404.1520(a)(4). First, the Commissioner must establish whether the claimant is presently employed. *See* 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is unemployed, the Commissioner goes to the second step and determines whether the claimant has a "severe" impairment restricting his or her ability to work. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant has such an impairment, the Commissioner moves to the third step and considers whether the medical severity of the impairment "meets or equals" a listing in Appendix One of Subpart P of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is considered disabled. *See id.*; 20 C.F.R. § 404.1520(d).

If the claimant alleges a mental impairment, "the regulations further require that the [Commissioner] 'rate the degree of [the claimant's] functional limitation based on the extent to which [her] impairment(s) interferes with [her] ability to function independently, appropriately, effectively, and on a sustained basis.'" *Rosario v. Kijakazi*, No. 20-CV-5490 (JPC) (BCM), 2022 WL 875925, at *11

(S.D.N.Y. Mar. 15, 2022) (quoting 20 C.F.R. § 404.1520a(c)(2)), *adopted by* 2022 WL 976879 (Mar. 31, 2022). "The degree of functional limitation is rated in 'four broad functional areas,' including the claimant's ability to '[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.'" *Id.* (quoting 20 C.F.R. § 404.1520a(c)(3)). The Commissioner uses a five-point scale to determine the degree of limitation in each area: None, mild, moderate, marked, and extreme. *See* 20 C.F.R. § 404.1520a(c)(4). "These ratings are used both at step two, to determine whether a mental impairment is 'severe,' and at step three, to determine whether a severe mental impairment meets or medically equals a listed impairment." *Rosario*, 2022 WL 875925, at *11.

If the claimant's impairment does not meet or equal a listed impairment, then the Commissioner continues to the fourth step and determines whether the claimant has the RFC to perform his or her past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv). Finally, if the claimant does not have the RFC to perform past relevant work, the Commissioner completes the fifth step and ascertains whether the claimant possesses the ability to perform any other work. *See* 20 C.F.R. § 404.1520(a)(4)(v).

The claimant has the burden at the first four steps. *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). If the claimant is successful, the burden shifts to the Commissioner at the fifth and final step, where the Commissioner must establish

that the claimant has the ability to perform some work in the national economy.
*See, e.g., Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

### b. Duty to Develop the Record

"Social Security proceedings are inquisitorial rather than adversarial." *Sims
v. Apfel*, 530 U.S. 103, 110–11 (2000).  Consequently, "the social security ALJ,
unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop
the record in light of the essentially non-adversarial nature of a benefits
proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation
marks omitted).  As part of this duty, the ALJ must "investigate the facts and
develop the arguments both for and against granting benefits." *Sims*, 530 U.S. at
111.  Specifically, under the applicable regulations, the ALJ is required to develop a
claimant's complete medical history.  *Pratts*, 94 F.3d at 37 (citing 20 C.F.R.
§§ 404.1512(d)–(f)).  This responsibility "encompasses not only the duty to obtain a
claimant's medical records and reports but also the duty to question the claimant
adequately about any subjective complaints and the impact of the claimant's
impairments on the claimant's functional capacity." *Pena v. Astrue*, No. 07-CV-
11099 (GWG), 2008 WL 5111317, at *8 (S.D.N.Y. Dec. 3, 2008) (citations omitted).

Whether the ALJ has satisfied this duty to develop the record is a threshold
question.  Before determining whether the Commissioner's final decision is
supported by substantial evidence under 42 U.S.C. § 405(g), "the court must first be
satisfied that the ALJ provided plaintiff with 'a full hearing under the Secretary's
regulations' and also fully and completely developed the administrative record."

*Scott v. Astrue*, No. 09-CV-3999 (KAM) (RLM), 2010 WL 2736879, at *12 (E.D.N.Y.

July 9, 2010) (quoting *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751,

755 (2d Cir. 1982)); *see also Rodriguez ex rel. Silverio v. Barnhart*, No. 02-CV-5782

(FB), 2003 WL 22709204, at *3 (E.D.N.Y. Nov. 7, 2003) ("The responsibility of an

ALJ to fully develop the record is a bedrock principle of Social Security law.") (citing

*Brown v. Apfel*, 174 F.3d 59 (2d Cir. 1999)).  The ALJ must develop the record even

where the claimant has legal counsel.  *See, e.g.*, *Perez v. Chater*, 77 F.3d 41, 47 (2d

Cir. 1996).  Remand is appropriate where this duty is not discharged.  *See, e.g.*,

*Moran*, 569 F.3d at 114–15 ("We vacate not because the ALJ's decision was not

supported by substantial evidence but because the ALJ should have developed a

more comprehensive record before making his decision.").

### c. Evaluation of Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in

determining whether a claimant is disabled under the [Social Security] Act."  *Pena*

*ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y.

Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)) (internal quotation

marks omitted).  For SSI and Social Security Disability Insurance applications filed

prior to March 27, 2017, SSA regulations set forth the "treating physician rule,"

which required an ALJ to give more weight to the opinions of physicians with the

most significant clinical relationship with the plaintiff.  20 C.F.R. §§ 404.1527(c)(2);

416.927(d)(2); *see also, e.g.*, *Taylor v. Barnhart*, 117 F. App'x 139, 140 (2d Cir. 2004).

Under the treating physician rule, an ALJ was required to give "good reasons," 20

14

C.F.R. § 404.1527(c)(2), if she determined that a treating physician's opinion was not entitled to "controlling weight," or at least "more weight," than the opinions of non-treating and non-examining sources. *Gonzalez v. Apfel*, 113 F. Supp. 2d 580, 588 (S.D.N.Y. 2000). In addition, a consultative physician's opinion was generally entitled to "little weight." *Giddings v. Astrue*, 333 F. App'x 649, 652 (2d Cir. 2009).

However, in January 2017, the SSA revised its regulations regarding the evaluation of medical opinion for claims filed on or after March 27, 2017 (such as Tawredou's claim in this case). *See* REVISIONS TO THE RULES REGARDING THE EVALUATION OF MEDICAL EVIDENCE, 82 Fed. Reg. 5844, 5869–70 (Jan. 18, 2017). "In implementing new regulations, the SSA has apparently sought to move away from a perceived hierarchy of medical sources." *Velasquez v. Kijakazi*, No. 19-CV-9303 (DF), 2021 WL 4392986, at *19 (S.D.N.Y. Sept. 24, 2021) (citing 82 Fed. Reg. 5844). The new regulations state that an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." *Id.* (quoting 20 C.F.R. §§ 404.1520c(a), 416.1520c(a)). "Instead, an ALJ is to consider all medical opinions in the record and 'evaluate their persuasiveness' based on the following five 'factors': (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) any 'other' factor that 'tend[s] to support or contradict a medical opinion.'" *Id.* (quoting 20 C.F.R. §§ 404.1520c(a)–(c), 416 920c(a)–(c)).

Notwithstanding the requirement to "consider" all of these factors, the ALJ's duty to articulate a rationale for each factor varies. 20 C.F.R. §§ 404.1520c(a)–(b), 416 920c(a)–(b). Under the new regulations, the ALJ must "explain how [she] considered" both the supportability and consistency factors, as they are "the most important factors." 20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2); *see also, e.g., Russ v. Comm'r of Soc. Sec.*, No. 20-CV-6389 (RWL), 2022 WL 278657, at *6 (S.D.N.Y. Jan. 31, 2022) ("[t]he new regulations give most importance to two of the same factors previously considered to determine whether a treating doctor's opinion should be given controlling weight," referring to the supportability and consistency factors). Evaluating "supportability is an inquiry geared toward assessing how well a medical source supported and explained their opinion(s)." *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-502 (KMW) (KHP), 2021 WL 363682, at *10 (S.D.N.Y. Jan. 29, 2021) *adopted by*, 2022 WL 717612 (Mar. 10, 2022). With regard to consistency, "the new rules provide that the greater the consistency between a particular medical source/opinion and the other evidence in the medical record, the stronger that medical opinion becomes." *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(3)); *see generally* 42 U.S.C. § 423(d)(5)(B) (requiring ALJ to base decision on "all the evidence available in the [record]").

In addition, under the new regulations, the ALJ is required to consider, but need not explicitly discuss, the three remaining factors (relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion). *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "[W]hen the

16

opinions offered by two or more medical sources about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, the ALJ [should] articulate how he considered the remaining factors in evaluating the opinions." *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021) (citing 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3)) (internal quotations removed).

Courts considering the application of the new regulations have concluded that "the factors are very similar to the analysis under the old [treating physician] rule." *Velasquez*, 2021 WL 4392986, at *20 (quoting *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 885 (D. Vt. 2021)); *see also Acosta Cuevas*, 2021 WL 363682, at *9 (collecting cases) ("the essence of the rule remains the same, and the factors to be considered in weighing the various medical opinions in a given claimant's medical history are substantially similar"). "This is not surprising considering that, under the old rule, an ALJ had to determine whether a treating physician's opinion was *supported* by well-accepted medical evidence and *not inconsistent* with the rest of the record before controlling weight could be assigned." *Acosta Cuevas*, 2021 WL 363682, at *9; *see also e.g., Andrew G. v. Comm'r of Soc. Sec.*, No. 19-CV-942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) ("consistency and supportability" were foundation of treating physician rule).

"The failure to properly consider and apply" supportability and consistency "is grounds for remand." *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *9 (S.D.N.Y. Aug. 6, 2021); *see also Rosario v. Comm'r of Soc. Sec.*,

No. 20-CV-7749 (SLC), 2022 WL 819910, at *8 (S.D.N.Y. Mar. 18, 2022) ("ALJ must

explain in all cases how [he or she] considered" supportability and consistency);

*Rivera v. Comm'r of Soc. Sec.,* No. 19-CV-4630 (LJL) (BCM), 2020 WL 8167136, at

*22 (S.D.N.Y. Dec. 30, 2020), *adopted,* 2021 WL 134945 (Jan. 14, 2021) (remanding

so ALJ can "explicitly discuss both the supportability and consistency of the

consulting examiners' opinions").  "An ALJ's failure to apply the correct legal

standard constitutes reversible error if that failure might have affected the

disposition of the case." *Lopez v. Berryhill*, 448 F. Supp. 3d 328, 341 (S.D.N.Y. 2020)

(citing *Kohler*, 546 F.3d at 265).  However, the Court need not remand the case if

the ALJ only committed harmless error, *i.e.*, where the "application of the correct

legal principles to the record could lead only to the same conclusion." *Zabala v.

Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (alteration omitted) (citing *Johnson v.

Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

### d. Claimant's Credibility

An ALJ's credibility finding as to the claimant's disability is entitled to

deference by a reviewing court. *Osorio v. Barnhart*, No. 04-CV-7515 (DLC), 2006

WL 1464193, at *6 (S.D.N.Y. May 30, 2006).  "[A]s with any finding of fact, '[i]f the

Secretary's findings are supported by substantial evidence, the court must uphold

the ALJ's decision to discount a claimant's subjective complaints.'" *Id.* (quoting

*Aponte v. Sec'y of Health and Hum. Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)).  Still,

an ALJ's finding of credibility "must . . . be set forth with sufficient specificity to

permit intelligible plenary review of the record." *Pena*, 2008 WL 5111317, at *10

(internal quotation marks omitted) (quoting *Williams v. Bowen*, 859 F.2d 255, 260–61 (2d Cir. 1988)). "The ALJ must make this [credibility] determination 'in light of the objective medical evidence and other evidence regarding the true extent of the alleged symptoms.'" *Id.* (quoting *Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir. 1984)).

SSA regulations provide that statements of subjective pain and other symptoms alone cannot establish a disability. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(a)). The ALJ must follow a two-step framework for evaluating allegations of pain and other limitations. *Id.* First, the ALJ considers whether the claimant suffers from a "medically determinable impairment that could reasonably be expected to produce" the symptoms alleged. *Id.* (citing 20 C.F.R. § 404.1529(b)). "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record.'" *Id.* (citing 20 C.F.R. § 404.1529(a)). Among the kinds of evidence that the ALJ must consider (in addition to objective medical evidence) are:

> 1. The individual's daily activities; 2. [t]he location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. [f]actors that precipitate and aggravate the symptoms; 4. [t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. [t]reatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. [a]ny measures other than treatment the individual uses or has used to relieve pain or other

> symptoms (e.g., lying flat on his back, standing for 15 to
> 20 minutes every hour, or sleeping on a board); and 7.
> [a]ny other factors concerning the individual's functional
> limitations and restrictions due to pain or other
> symptoms.

*Pena*, 2008 WL 5111317, at *11 (citing Social Security Ruling ("SSR") 96-7p, 1996

WL 374186, at *3 (SSA July 2, 1996)).

## B.  The ALJ Did Not Err in his Consideration of Dr. Rose's Medical Opinion

The sole issue that Tawredou presents on this appeal is that the ALJ did not

properly evaluate Dr. Rose's opinion.  Pl. Mem. at 13.  In his opinion, Dr. Rose

concluded that since September 6, 2017, Tawredou could never lift more than 10

pounds and could only occasionally lift less than 10 pounds.  AR at 968–69.  He

found that while she could constantly bend, stoop, kneel, and crawl, she could only

occasionally climb and balance and she could only stand and/or walk for two hours

in an eight-hour workday.  *Id.* at 969.  Dr. Rose concluded that Tawredou had

environmental limitations of heights and humidity, and that she should have "no

prolonged lifting, carrying pulling, pushing . . . standing, walking, [or] walking on

uneven surface[s.]"  Finally, he determined that she was limited to only occasional

manipulative activities, including reaching, feeling, handling, pushing, and pulling.

*Id.*  Although the ALJ determined that Dr. Rose's opinion was "generally

persuasive," he concluded that the manipulative limitations Dr. Rose identified

were "not supported" enough to be included in Tawredou's RFC determination.  *Id.*

at 18.  For the reasons set forth below, the ALJ properly assessed Dr. Rose's opinion

by explicitly addressing both the supportability and consistency factors, as he was
required to do.

### 1. Supportability

Tawredou contends that the ALJ did not properly address the supportability
of Dr. Rose's opinion because he relied on "a single benign finding" and failed to
articulate how Dr. Rose's opinion was not well-supported.  Pl. Rep. at 2.  The Court
disagrees.

In this case, the ALJ sufficiently evaluated the supportability of Dr. Rose's
opinion.  The "'supportability' factor asks how well a medical source supported [his
or her] opinion(s) with 'objective medical evidence' and 'supporting explanations.'"
*Acosta Cuevas*, 2021 WL 363682, at *14 (citing 20 C.F.R. §§ 404.1520c(c)(1),
416.920c(c)(1)).  An ALJ must directly "explain . . . what the respective [sources]
used to support their opinions and reach their ultimate conclusions."  *Id.*  Rather
than rely on a single finding as Tawredou argued, the ALJ in fact based his
supportability analysis on Dr. Rose's entire treatment record.  Here, specifically, the
ALJ described how certain physical examination results and reported symptoms did
not support the more restrictive manipulative limitation Dr. Rose had
identified.  AR 18–19.  He explained that "physical exam findings . . . remained
stable" throughout Dr. Rose's treatment.  *Id.* at 19 (*referring to id.* at 862–967).[5]

---

[5] A review of the record substantiates that although Dr. Rose concluded that the
manipulative limitations had been present since September 2017, AR at 969, his
examination notes do not include left elbow pain in the list of complaints made at
every physical examination throughout his treatment.  *See, e.g., id.* at 894 (March
2018), 902 (April 2018), 905 (May 2018), 910 (June 2018).

For instance, the ALJ observed that in August 2018, Dr. Rose documented "no acute complaints regarding the left elbow" and concluded that Tawredou was "functioning well with no symptoms" after finding moderate tenderness and 4/5 motor strength in her left elbow. *Id.* (*referring to id.* at 914, 916–17).  Moreover, the ALJ observed that Tawredou continued to receive only conservative treatments, despite her reports of intermittent stiffness and pain in her left elbow.  *Id.*  The ALJ specifically noted that Dr. Rose had prescribed "solely conservative treatment of physical therapy, Tylenol, and use of a heating pad" for her left elbow pain.  *Id.* at 18–19; *see Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2008) (conservative treatment cited to support conclusion that claimant not disabled).  Because the ALJ explicitly "analyz[ed] [Dr. Rose's] underlying treatment records against [his] opinion," he properly evaluated the supportability of Dr. Rose's opinion regarding Tawredou's left elbow manipulative limitations.  *Rosario v. Comm'r of Soc. Sec.*, No. 20-CV-7749 (SLC), 2022 WL 819810, at *10 (S.D.N.Y. Mar. 18, 2022) (ALJ satisfied supportability factor by "analyzing [physician assistant's] underlying treatment records against her opinion, and finding an incongruity").

Moreover, even though Tawredou argues that the ALJ did not "properly explain the factor of supportability" as Dr. Rose provided that his opinion was supported by "clinical findings regarding ulnar nerve of left upper limb," Pl. Rep. at 3; Pl. Mem. at 15 (*referring to* AR 969 where Dr. Rose noted findings to support his assessment), the ALJ is entitled to resolve inconsistencies.  *See* 20 C.F.R. § 416.920b(b) ("ALJ properly determines disability by resolving evidentiary

inconsistencies in the record"); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("we defer to the Commissioner's resolution of conflicting evidence."). He did so here, and provided his rationale as described above.

Thus, the ALJ sufficiently explained his determination that the manipulative limitations determined by Dr. Rose were "not supported" by his treatment notes. AR at 18; *see also Aguirre v. Saul*, No. 20-CV-4648 (GWG), 2021 WL 4927672, at *7 (S.D.N.Y. Oct. 22, 2021) (ALJ "properly concluded" that treating physician's medical opinion "lacked support" from, *inter alia*, his own treatment notes).

### 2. Consistency

Tawredou further contends that Dr. Rose's opinion was consistent with the record. Pl. Mem. at 15. The "consistency" factor in the new SSA regulations requires the ALJ to address how the medical source's opinion compares with "evidence from other medical sources and nonmedical sources" in the file. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). "Consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Vecchio v. Comm'r of Soc. Sec.*, No. 20-CV-8105 (MKV) (SLC), 2021 WL 8013772, at *11 (S.D.N.Y. Dec. 1, 2021) (cleaned up), *adopted by* 2022 WL 873175 (Mar. 24, 2022). Here, the ALJ did not err in complying with the regulations for the following three reasons.

First, the ALJ explicitly cited other medical sources in the record to determine that Dr. Rose's opinion that Tawredou was limited to only occasional manipulative activities was inconsistent with the record. *See, e.g., Young v.*

*Kijakazi*, No. 20-CV-3604 (SDA), 2021 WL 4148733, at \*10–11 (S.D.N.Y. Sept. 13, 2021) (no error in assessing consistency when ALJ explicitly explained inconsistencies among multiple medical opinions and other parts of the record). Specifically, he observed that Dr. Rose's opinion was inconsistent with that of Dr. Ann Marie Finegan, an internal medicine consultative examiner.  AR at 19.  He discussed Dr. Finegan's prescribed limitations, which were based in part on her findings that Tawredou had 5/5 strength in the upper extremity on right and left, intact hand and finger dexterity, and 5/5 grip strength bilaterally.  *Id.* (*referring to id.* at 381).  The ALJ determined Dr. Finegan's opinion to be "generally persuasive," and Tawredou does not dispute this assessment.  *Id*; *see also Jacqueline L.*, 515 F. Supp. 3d at 8 (opinion of consultative examiner may override treating physician opinion).  Moreover, the ALJ's analysis of the record also explicitly noted facts that demonstrate further inconsistencies with Dr. Rose's purported manipulative limitations, including the following: 1) Dr. Paul DeGuzman, Tawredou's primary care provider, stated that she was in a good general state of health during the period in question and able to do usual activities, *id.* at 17 (*referring to id.* at 776–95); and 2) a physical examination during an August 2019 hospitalization found Tawredou to have full 5/5 motor strength in the upper and lower extremities, a normal range of motion of the extremities, and unremarkable back with no tenderness, *id.* at 18 (*referring to id.* at 797–99).  Therefore, the ALJ did not err in affording part of Dr. Rose's opinion less weight to the extent it was inconsistent with other medical sources in the record.  *See, e.g., Byrd v. Kijakazi*, No. 20-CV-4464

24

(JPO) (SLC), 2021 WL 5828021, at *18 (S.D.N.Y. Nov. 12, 2021) (no error in assessment of medical opinion when ALJ relied on findings of consultative sources and explained opinion was not consistent with other records as well as claimant's own reports), *adopted by* 2021 WL 5827636 (Dec. 7, 2021).[6]

Second, the ALJ considered Dr. Rose's opinion in light of Tawredou's own reported functioning before concluding that it was inconsistent with the record. *See Villalobo v. Saul*, No. 19-CV-11560 (CS) (JCM), 2021 WL 830034, at *13 (S.D.N.Y. Feb. 9, 2021) (no error in affording medical opinion less weight when inconsistent with plaintiff's self-reported activities of daily living and treatment records). The ALJ observed that Tawredou retained the ability to "be[] the sole care provider for an infant during the workday" based on her own testimony at the hearing, which included that she makes the baby's meals and changes his diapers. AR at 19 (*referring to id.* at 38–39). Unlike the ALJ in *Pataro v. Berryhill* (on which Tawredou relies), the ALJ here relied on a description of recurrent activities as opposed to one single instance of an activity to determine that Dr. Rose's opinion

---

[6] While an ALJ "may not ignore or mischaracterize evidence of a person's alleged disability," he also does not "need to mention every item of testimony presented" or "reconcile explicitly every conflicting shred of medical testimony." *Russ*, 2022 WL 278567, at *4 (cleaned up). Here, the ALJ did not ignore evidence of left elbow limitations as he included in his review of the record the fact that Dr. Albert Villafuerte, Tawredou's treating physiatrist, noted limited range of motion in her left elbow, AR at 17, and then stated that he considered this limitation in his ultimate RFC determination. *See id.* at 19 ("Given Dr. Rose and Dr. Villafuerte's treatment notes, the undersigned finds that additional manipulative and postural limitations are warranted, as discussed above"). While other opinions or evidence in the record may conflict, courts must defer to an ALJ's reconciliation of conflicting evidence. *See, e.g., Cage*, 692 F.3d at 122.

was inconsistent with Tawredou's own reported functioning. *Pataro v. Berryhill*, No. 17-CV-6165 (JGK) (BCM), 2019 WL 1244664, at *19 (S.D.N.Y. Mar. 1, 2019) (ALJ erred in determining claimant not disabled by improperly relying on single mowing incident, during which claimant injured herself, without acknowledging other limitations), *adopted by* 2019 WL 1244325 (Mar. 18, 2019). Therefore, the ALJ did not err in finding unpersuasive part of Dr. Rose's opinion when it was inconsistent with Tawredou's self-reported activities of daily living. *See Melendez v. Comm'r of Soc. Sec.*, No. 20-CV-6695 (BCM), 2022 WL 912928, at *7 (S.D.N.Y. Mar. 28, 2022) (no error in determining opinion not persuasive when ALJ "appropriately considered plaintiff's activities of daily living" in comparison with opinion's conclusion) (collecting cases).

Finally, Tawredou's argument that the ALJ erred by ignoring relevant testimony that was consistent with Dr. Rose's opinion is without merit. *See* Pl. Rep. at 3–4. Not only does Tawredou not cite any law to indicate that such testimony would be dispositive, but much of the hearing testimony she contends the ALJ ignored is unrelated to her left elbow limitations, which is the issue in question with respect to Dr. Rose's opinion. *See id.* at 3 ("her husband does the cooking because she cannot stand for too long," "she uses a cane," "she can stand for 5 minutes and sit for 10 minutes without pain"). Furthermore, the only testimony Tawredou cites that is pertinent to left elbow limitations does not unambiguously support the inference that she "has difficulty using her hands on a daily basis," as she contends. *Id.* The transcript from the hearing reads:

> Q: Do you have any difficulties using your hands on a daily
> basis?
> A: On a daily basis, if it's light, if it's not heavy.
> Q: Okay.
> A: Yes, but if it's heavy, I can't.

AR at 46. This testimony appears to support the inference that Tawredou had
difficulties using her hands daily only when interacting with items that are "heavy,"
but it is not clear that is necessarily true for when items are "light."

Given the foregoing, the ALJ properly evaluated the supportability and
consistency of Dr. Rose's opinion with respect to Tawredou's left elbow limitations.
Therefore, the ALJ did not err in his assessment of Dr. Rose's opinion, which was
neither supported by his own treatment notes and examination record nor
consistent with other parts of the record. *See, e.g., Salinovich v. Comm'r of Soc.
Sec.*, 783 F. App'x 67, 68 (2d Cir. 2019) (substantial evidence supported ALJ's
decision to afford only some weight to treating physician's opinion when it was
inconsistent with his contemporaneous treatment notes, a consultative examining
physician's assessment, and claimant's own testimony at administrative hearing);
*Domm v. Comm'r of Soc. Sec.*, 579 F. App'x 27, 28 (2d Cir. 2014) (substantial
evidence supported ALJ's decision to discount physician's opinion when opinion was
inconsistent with physician's treatment notes, conclusions of other medical experts,
and plaintiff's testimony regarding daily functioning).

Because he explicitly considered both the consistency and supportability of
Dr. Rose's opinion, the ALJ did not fail to properly evaluate the opinion as required

27

by the new SSA regulations in making his findings.  Therefore, the ALJ made no legal error, and remand is not warranted.[7]

## III. CONCLUSION

For the foregoing reasons, Tawredou's motion for judgment on the pleadings is denied and the Commissioner's cross-motion is granted.

The Clerk is directed to mark the motion at Docket Number 24 as "denied," and the motion at Docket Number 28 as "granted," and enter judgment for the Acting Commissioner.

**SO ORDERED.**

Dated: August 2, 2022
        New York, New York

_____
JAMES L. COTT
United States Magistrate Judge

---

[7] To the extent that Tawredou contends substantial evidence does not exist for the RFC finding, Pl. Mem. at 13, she ignores the ALJ's express consideration of the examination of Dr. Robert Marini, her pain management physician, which he cited to support his RFC determination that Tawredou could no more than frequently maneuver her non-dominant hand.  AR at 15.  Tawredou herself concedes that he concluded mild findings.  Pl. Mem. at 15 (highlighting EMG findings showing mild carpal tunnel syndrome and mild ulnar nerve entrapment, and Dr. Marini's observations of mild atrophy along the biceps).  "Ultimately, it is the claimant's burden to demonstrate the limitations in the RFC," and Tawredou has not done so here.  *Gutierrez v. Cmm'r of Social Security,* No. 20-CV-10233 (KHP), 2022 WL 2116718, at *9 (S.D.N.Y. June 13, 2022) (citing *Smith v. Berryhill,* 740 F. App'x 721, 726 (2d Cir. 2018)); *see also Whitmore v. Kijakazi,* No. 20-CV-08435 (SN), 2022 WL 976964, at *11 (S.D.N.Y. Mar. 31, 2022).